**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION**

| | | |
|---|---|---|
| Richard Reynolds, Sharon Linick, | ) | |
| Linda Neely, Joseph Schubert, | ) | |
| Doreen Mastandrea, Jonathan Anderson, | ) | C.A. No.: 4:14-cv-2261-PMD |
| Steven Bradley, Gerry Conklin, | ) | |
| Jennifer Crawford, Daniel Delpriora, | ) | |
| John Maynard, April McLean, | ) | **ORDER** |
| Mike Smith, William Suitt, | ) | |
| Donna Weinberg, Larry Marshall, | ) | |
| Michelle Johnson, and Edmundo Velasco, | ) | |
| individually and on behalf of other | ) | |
| employees similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Wyndham Vacation Resorts, Inc., and | ) | |
| Wyndham Vacation Ownership, Inc., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the Court on Plaintiffs' Motion, on behalf of themselves and all others similarly situated, for Conditional Class Certification ("Motion") pursuant to the collective action provision of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b) (ECF No. 69). For the reasons set forth herein, Plaintiffs' Motion is granted.

**BACKGROUND**

On June 10, 2014, Plaintiffs commenced this action on behalf of themselves and others similarly situated, seeking unpaid minimum wages and unpaid overtime wages pursuant to the FLSA. The named Plaintiffs, as well as those who have subsequently given notice of their consent to join this action, are current or former sales representatives of Wyndham Vacation

Resorts, Inc. Plaintiffs seek recovery from Wyndham Vacation Resorts, Inc. and Wyndham Vacation Ownership, Inc. (collectively, "Defendants").

Plaintiffs primarily allege that Defendants required them to work off-the-clock and that Defendants' managers shaved[1] their time to prevent overtime work. Defendants paid Plaintiffs "a recoverable hourly draw plus commissions on their sales." (Pls.' Mot. Conditional Certification, ECF No. 69, at 5.) "[A]ny draw paid by [Defendants] that Plaintiffs did not repay out of commissions was a 'draw balance' that was carried forward indefinitely until Plaintiffs repaid it or ceased to work for [Defendants]." *Id.* Plaintiffs allege that this put them "under pressure not to take a lot of draw money, because a high draw balance would mean that [Defendants] w[ere] losing money on the Plaintiffs' work." *Id.* However, Defendants' written policy required sales representatives to be on the clock in order to be paid a commission. Plaintiffs allege that "[t]hese competing policies resulted in an environment where off the clock work and time shaving was a matter of course." *Id.* Finally, Plaintiffs allege "[a]ll of the managers knew that the Plaintiffs worked off the clock because the managers directed and watched this happen, and all the managers accepted that this was normal." *Id.* at 6.

Defendants assert Plaintiffs have not presented sufficient evidence to show that the named plaintiffs are similarly situated to the potential class members, and dispute Plaintiffs' allegations of off-the-clock work.

## **PROCEDURAL HISTORY**

On July 27, 2015, Plaintiffs filed their Motion for Conditional Certification. Defendants filed a Response in Opposition on August 13, and Plaintiffs replied on August 21. This matter is now ripe for consideration.

---
1. Plaintiffs have produced evidence that Defendants' managers would reduce their hours worked so that they did not work overtime.

## **LEGAL STANDARD**

Under the FLSA, plaintiffs may institute a collective action against their employer on behalf of themselves and similarly situated employees. The FLSA's collective action provision states that:

> [a]n action to recover [unpaid minimum wage and overtime compensation] may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). The mechanism outlined in § 216(b) is designed to facilitate the efficient adjudication of similar claims by "similarly situated" employees, permitting the consolidation of individual claims and the pooling of resources in prosecuting such actions against their employers. *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989); *LaFleur v. Dollar Tree Stores, Inc.*, 30 F. Supp. 3d 463, 467 (E.D. Va. 2014), *reconsideration denied*, 2014 WL 2121563 (E.D. Va. May 20, 2014), *and motion to certify appeal denied*, 2014 WL 2121721 (E.D. Va. May 20, 2014); *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 367 (S.D.N.Y. 2007). In deciding whether the named plaintiffs in an FLSA action are "similarly situated" to other potential plaintiffs, courts generally employ a two-stage approach.[2] *Purdham v. Fairfax Cty. Pub. Sch.*, 629 F. Supp. 2d 544, 547 (E.D. Va. 2009) (quoting *Parker v. Rowland Express, Inc.*, 492 F. Supp. 2d 1159, 1164 (D. Minn. 2007)); *see also Regan v. City of Charleston*, No. 2:13-cv-03046-PMD, 2014 WL 3530135, at *2 (D.S.C. July 16, 2014)

---

2. Although the Fourth Circuit has not yet enunciated a test for conditional certification of collective actions, district courts in the Fourth Circuit, including this Court, typically follow the two-stage, or two-step, approach when deciding whether named plaintiffs are similarly situated to potential plaintiffs. *E.g.*, *LaFleur*, 30 F. Supp. 3d. at 467 ("District courts within . . . the Fourth Circuit . . . have uniformly employed a two-step inquiry in deciding whether to certify a collective action under the FLSA . . . ."); *Curtis v. Time Warner Entm't*, No. 3:12-cv-2370-JFA, 2013 WL 1874848, at *2 (D.S.C. May 3, 2013) ("Although the Fourth Circuit has not directly addressed the appropriate standard for certifying a collective action under § 216(b), district courts in this circuit, including this court, follow the [two-stage] process . . . .").

3

*reconsideration denied*, 40 F. Supp. 3d 698 (D.S.C. 2014); *Pelczynski v. Orange Lake Country Club, Inc.*, 284 F.R.D. 364, 367 (D.S.C. 2012); *Simons v. Pryor's, Inc.*, No. 3:11-cv-0792-CMC, 2011 WL 6012484, at *1 (D.S.C. Nov. 30, 2011); *MacGregor v. Farmers Ins. Exch.*, No. 2:10-cv-03088-DCN, 2011 WL 2981466, at *2 (D.S.C. July 22, 2011).

The first step in this process is the "notice," or "conditional certification," stage. *Purdham*, 629 F. Supp. 2d at 547. Here, "a plaintiff seeks conditional certification by the district court in order to provide notice to similarly situated plaintiffs" so that they can "opt-in" to the collective action. *Pelczynski*, 284 F.R.D. at 367–68. With regard to this notice phase, "[t]he Supreme Court has held that, in order to expedite the manner in which collective actions under the FLSA are assembled, 'district courts have discretion[,] in appropriate cases[,] to implement . . . § 216(b) . . . by facilitating notice to potential plaintiffs.'" *Purdham*, 629 F. Supp. 2d at 547 (quoting *Hoffman-La Roche, Inc.*, 493 U.S. at 169). At this stage, the court reviews the pleadings and affidavits to determine whether the plaintiff has carried his burden of showing that he is similarly situated to the other putative class members. *Pelczynski*, 284 F.R.D. at 368; *Purdham*, 629 F. Supp. 2d at 547–48. "Because the court has minimal evidence, this determination is made using a fairly lenient standard," *Steinberg v. TQ Logistics, Inc.*, No. 0:10-cv-2507-JFA, 2011 WL 1335191, at *1 (D.S.C. Apr. 7, 2011), requiring plaintiffs to make a "a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law," *Purdham*, 629 F. Supp. 2d at 548. If the court determines that the proposed class members are similarly situated, the court conditionally certifies the class. *Steinberg*, 2011 WL 1335191, at *1. The putative class members are then notified and afforded the opportunity to "opt-in," and the case proceeds as a representative action throughout discovery. *Id.* (citing *Scholtisek v. Eldre Corp.*, 229 F.R.D. 381,

4

387 (W.D.N.Y. 2005)); *see Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1530 (2013) (citation omitted) ("'[C]onditional certification' does not produce a class with an independent legal status, or join additional parties to the action. The sole consequence of conditional certification is the sending of court-approved written notice to employees, who in turn become parties to a collective action only by filing written consent with the court." (citing § 216(b))).

Second, after the court has conditionally certified the class, the potential class members have been identified and notified, and discovery has been completed, "a defendant may then move to decertify the collective action, pointing to a more developed record to support its contention that the plaintiffs are not similarly situated to the extent that a collective action would be the appropriate vehicle for relief." *Pelczynski*, 284 F.R.D. at 368. At this optional "decertification stage," the court applies a heightened fact-specific standard to the "similarly situated" analysis. *Steinberg*, 2011 WL 1335191, at *2; *see Pelczynski*, 284 F.R.D. at 368. "Courts have identified a number of factors to consider at this stage, including (1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendants that appear to be individual to each plaintiff; and (3) fairness and procedural considerations." *Curtis*, 2013 WL 1874848, at *3 (internal quotation marks omitted). If the court determines that the plaintiffs are not, in fact, similarly situated, it may decertify the class, dismiss the opt-in plaintiffs' claims without prejudice, and permit the named plaintiffs to proceed on their individual claims. *Id.*

"When sufficient evidence in the record at the initial 'notice' stage makes it clear that notice is not appropriate, however, a court can collapse the two stages of the analysis and deny certification outright." *Purdham*, 629 F. Supp. 2d at 547 (citing *Holt v. Rite Aid Corp.*, 333 F. Supp. 2d 1265, 1273–74 (M.D. Ala. 2004)). As discussed above, a fairly lenient standard for

5

conditional certification is appropriate where the parties have only minimal evidence. However, Plaintiffs have used evidence obtained during discovery in support of their Motion, and the parties have substantially completed discovery. Under such circumstances, "it would be 'inequitable . . . to allow plaintiffs to proceed with the more lenient standard applied in cases where the parties have not yet begun discovery.'" *MacGregor*, 2012 WL 2974679, at *3 (quoting *McClean v. Health Sys., Inc.*, No. 11-03037-CV-S-DGK, 2011 WL 615309, at *4 (W.D. Mo. Dec. 12, 2011)). Accordingly, the Court will apply a more stringent intermediate standard to Plaintiffs' Motion and consider the decertification factors discussed above in deciding whether conditional certification is appropriate. *See McClean*, 2011 WL 6153091, at *4; *Davis v. Charoen Pokphand (USA), Inc.*, 303 F. Supp. 2d 1272, 1276 (M.D. Ala. 2004).

## ANALYSIS

Plaintiffs request that this Court enter an order: (1) conditionally certifying a class of individual timeshare salespersons ("Proposed Class"), as detailed further herein; (2) requiring Defendants to produce the full names, home addresses, e-mail addresses, telephone numbers, and the last four digits of each class member's Social Security number; and (3) authorizing Plaintiffs to issue a notice to the Proposed Class. The Court will address each request *seriatim*, along with Defendants' objections thereto.

**1. Conditional Certification**

Plaintiffs move to conditionally certify the following Proposed Class:

> All current and former employees who held the title of "Sales Representative" or the equivalent who (1) sold timeshare properties, and (2) worked more than forty (40) hours per week without receiving overtime wages at the Myrtle Beach locations of Wyndham Vacation Resorts, Inc.

(Pls.' Mot. Conditional Certification, ECF No. 69, at 1–2.)

6

Defendants assert that "Plaintiffs fail to carry their burden of showing that they are similarly situated" to the members of the Proposed Class. (Defs.' Resp. Opp'n Pls.' Mot. Conditional Certification, ECF No. 80, at 19.) The Court disagrees. As discussed above, the Court will apply a heightened level of scrutiny to Plaintiffs' Motion because the parties have substantially completed discovery. Accordingly, it is appropriate for the Court to consider the factors commonly used at the decertification stage to determine whether certification is warranted. Nonetheless, the Court is convinced that conditional certification of the Proposed Class is appropriate because the Proposed Class is similarly situated to the named Plaintiffs.

Plaintiffs seek to conditionally certify a class that includes employees who held three different types of positions,[3] were paid differently, worked during different time periods, and worked at six different locations in Myrtle Beach. Defendants assert that these differences make "each of their claims highly individualized and unsuitable for class treatment." (Defs.' Resp. Opp'n Pls.' Mot. Conditional Certification, ECF No. 80, at 2.) Despite these differences, the Court finds that the putative class members all had similar responsibilities and that Plaintiffs have shown Defendants engaged in a common scheme or plan of encouraging off-the-clock work and time shaving for purposes of conditional certification.[4] Plaintiffs, and all putative class members, were actively trying to sell various Wyndham vacation packages[5] to either new or

---

3. "Wyndham employs individuals in varying sales positions including In-House Sales Representative ("IH Rep"), Frontline Sales Representative ("FL Rep") and Discovery Representative ("Disco Rep"). These employees meet with different types of potential owners to sell Wyndham's packages." (Defs.' Resp. Opp'n Pls.' Mot. Conditional Certification, ECF No. 80, at 2.)

4. Almost every named plaintiff has provided a declaration that they worked off-the-clock or their time was shaved, or, in some cases, both. (*See, e.g.*, Reynolds Decl., ECF No. 69-1, at 3; Neely Decl., ECF No. 69-1, at 7; Schubert Decl., ECF No. 69-1, at 13; Mastandrea Decl., ECF No. 69-1, at 21–22; Anderson Decl., ECF No. 69-1, at 25–26; Gary Conklin Decl., ECF No. 69-1, at 34; Smith Decl., ECF No. 69-1, at 43; McLean Decl., ECF No. 69-2, at 1–2; Delpriora Decl., ECF No. 69-2, at 13; Linick Decl., ECF No. 69-2, at 16; Weinberg Decl., ECF No. 69-2, at 20; Velasco Decl., ECF No. 69-2, at 22–23; Marshall Decl., ECF No. 69-2, at 27; Brook Conklin Decl., ECF No. 69-2, at 31–32.)

5. Defendants characterize their timeshares as "vacation packages".

returning customers. Most, but not all, sales representatives presented these packages by taking customers on a tour. The fact that some of the putative class members, particularly the Discovery Representatives, did not use the tour format does not preclude conditional certification. Plaintiffs' varying locations, supervisors, and customers do not present such disparate factual and employment settings to warrant individual actions in lieu of a collective action. The critical inquiry here is whether Plaintiffs and the putative class members were subject to a common scheme or plan. *Pelczynski*, 284 F.R.D. at 368 (citing *Purdham*, 629 F. Supp. 2d at 548). Defendants correctly point out that Plaintiffs rely on a variety of theories of liability. Nonetheless, "[e]ach of the Plaintiffs has provided declarations and deposition testimony stating [that they were required to work off the clock], along with the contention that they worked overtime without being paid for it." (Pls.' Reply Supp. Mot. Conditional Certification, ECF No. 90, at 8.) Thus, although the individual theories may vary, the overall allegations are the same. "[T]he existence of varied circumstances leading to off-the-clock work does not undermine the core issue of whether a practice of allowing unpaid off-the-clock work existed." *LaFleur*, 30 F. Supp. 3d at 473. Accordingly, Defendants' argument fails.

Defendants also argue that their policy is to pay their sales representatives for all hours worked and that working off the clock is strictly prohibited. In particular, Defendants state that "[i]t is the employee's responsibility to verify the accuracy of time records." (Defs.' Resp. Opp'n Pls.' Mot. Conditional Certification, ECF No. 80, at 10.) Additionally, Defendants assert their policy "specifies that both approved and non-approved overtime work must be paid" and that managers "are permitted only to make authorized edits to time that accurately reflect time worked and PTO and Sick Time." *Id.* at 10–11. Defendants point out that their written policy prohibits employees from beginning work before clocking in, that employees are to notify their

8

manager of any hours worked while not on site, and that all overtime must be paid whether or not it is approved in advance. They further contend this "policy has teeth because, effective February 2014, any Sales Rep who is not clocked in for the entire tour is not eligible for commission on that tour." *Id.* at 11. Defendants state that "a number of Plaintiffs . . . received written corrective actions during their employment for failing to punch in and punch out" and that one plaintiff was fired because, among other things, he worked off the clock. *Id.* at 12. Finally, Defendants assert that "[a]ll Plaintiffs signed copies of [Defendants'] actual timekeeping policy or an acknowledgement of receiving that policy." *Id.* at 11. Defendants cite *Pacheco v. Boar's Head Provisions Co.* to support their position, where the court stated, "[b]ecause the company's written policy clearly requires that employees be paid for donning and doffing time, the Court cannot simply accept Plaintiffs' allegations that there is a common or uniform practice of *not* paying employees for donning and doffing time." 671 F. Supp. 2d 957, 962 (W.D. Mich. 2009).

Although Defendants' argument presents questions about the veracity of Plaintiffs' declarations, it is insufficient to justify denying conditional certification. Even though Defendants' written policy clearly prohibits working off the clock and retroactively adjusting hours, Defendants' practice may very well differ from its written policy. Accordingly, Plaintiffs' Motion cannot be defeated solely by reference to a written policy in light of Plaintiffs' declarations that the policy has been violated. Here, Plaintiffs have produced evidence showing that "no less than ten managers . . . all working at different . . . offices, instructed the Plaintiffs to work off the clock." (Pls.' Reply Supp. Mot. Conditional Certification, ECF No. 90, at 6.) The Court finds that such a prevailing practice demonstrates a strong inference of a common scheme or plan being applied to the named Plaintiffs and the putative class members.

Defendants' next argument is that their payroll policies do not violate the FLSA. Defendants are correct that paying employees an hourly draw and applying chargebacks likely does not constitute a per se violation of the FLSA. This claim goes to the merits of the case and is not relevant to the conditional certification determination. Accordingly, the Court declines to deny Plaintiff's Motion on the basis that Defendants' policies do not violate the FLSA.

Next, Defendants argue that Plaintiffs' claims arise from widely disparate factual and employment settings. First, Defendants assert that Plaintiffs' disparate amounts of claimed overtime will require an individualized and fact-intensive inquiry. In particular, Defendants state that "whether any particular Plaintiff is owed any additional wages must be determined individually and . . . requires an individualized credibility inquiry." (Defs.' Resp. Opp'n Pls.' Mot. Conditional Certification, ECF No. 80, at 29.) Defendants cite to this Court's decision in *Pelczynski v. Orange Lake Country Club* for the proposition that where individualized credibility determinations must be made, class certification must be denied. The Court finds that *Pelczynski* is distinguishable from this case on two grounds. First, the number of putative class members involved in *Pelczynski* was fairly small. 284 F.R.D. at 369. Here, "[t]he potential class numbers in the hundreds." (Pls.' Reply Supp. Mot. Conditional Certification, ECF No. 90, at 19.) Second, many of the potential class members in *Pelczynski* indicated that they received adequate compensation when the defendant performed an audit of their wages. 284 F.R.D. at 369. Many of those employees signed "an acknowledgement form admitting receipt of all pay owed." *Id.* The court stated that "[t]hese admissions will likely work against the putative plaintiffs, requiring additional evidence to overcome credibility deficiencies." Here, there is no such credibility issue since Defendants have not presented any evidence of signed acknowledgement forms or the like.

10

Accordingly, while some of the background facts of *Pelczynski* are facially similar, the facts on which the Court denied certification are distinctly different.

Second, Defendants assert that because Plaintiffs' claims are individualized, they cannot be proven through representative testimony. In particular, Defendants state that representative testimony will not suffice in determining liability. (Defs.' Resp. Opp'n Pls.' Mot. Conditional Certification, ECF No. 80, at 34.) "A collective action does not necessitate that there be no differences among class members, nor does it prohibit individualized inquiry in connection with fashioning the specific relief or damages to be awarded to each class member." *LaFleur*, 30 F. Supp. 3d at 474 (quoting *Houston v. URS Corp.*, 591 F. Supp. 2d 827, 832 (E.D. Va. 2008) (internal quotation marks omitted)). "The court should determine whether 'there is a meaningful nexus that binds Plaintiffs' claims together and that the similarities in their claims outweigh their differences.'" *Butler v. DirectSAT USA, LLC*, 47 F. Supp. 3d 300, 311 (D. Md. 2014) (quoting *Falcon v. Starbucks Corp.*, 580 F. Supp. 2d 528, 537 (S.D. Tex. 2008)). Defendants cite to a Seventh Circuit decision to decertify a class to support their argument against conditional certification. *See Espencheid v. DirectSAT USA, LLC*, 705 F.3d 770 (7th Cir. 2013). In particular, Defendants assert that where, as here, there are some factual differences between the plaintiffs, representative testimony may not be used and thus the purpose of a collective action is defeated. As discussed in *Butler v. DirectSAT USA, LLC*, however, the Seventh Circuit's decision in *Espencheid* turned in part on the fact that plaintiffs' counsel failed to provide any genuinely representative evidence, and thus the district judge would be faced with a multitude of separate hearings on damages. 47 F. 3d at 312 (citing *Espencheid*, 705 F.3d at 773–75). Additionally, in *Espencheid*, "the Seventh Circuit equated the standard to maintain an FLSA collective with that for maintaining a class action pursuant to Fed. R. Civ. P. 23." *Id.* (citing

11

*Espencheid*, 705 F.3d at 771–72). "The standards are not the same, however, and many courts have resisted using them interchangeably." *Id.* at 313; *see also Dorsey v. TGT Consulting, LLC*, 888 F. Supp. 2d 670, 687 & n.14 (D. Md. 2012) (collecting cases). Thus, *Espencheid* is not persuasive. Additionally, while damages may require an individualized inquiry, the Court is not convinced that liability or defenses could not be adjudicated using representative testimony. Finally, the court in *Butler* made clear that a collective action may be efficient even if one determination requires individualized inquiry. *Id.* at 315. Thus, even if the Court held a plethora of mini-trials on the question of damages, it could still be more efficient for the action to proceed on a collective basis because the Court could collectively adjudicate liability and class-wide defenses. Accordingly, the Court will not deny conditional certification on that basis.

Finally, Defendants assert that Plaintiffs are subject to individual defenses and that procedural and other fairness considerations preclude conditional certification. In particular, Defendants argue that: (1) mini-trials will be necessary to determine whether some plaintiffs' off-the-clock work was compensable; (2) some plaintiffs' claims are time-barred by the statute of limitations; (3) some plaintiffs' claims are subject to equitable defenses; (4) the Discovery Representatives are subject to the FLSA's Retail Sales Exemption; and (5) spoliation precludes some plaintiffs from testifying. The Court disagrees. Although Defendants assert certain individual defenses, they have also asserted defenses applicable to the whole class in their Motion for Summary Judgment (ECF No. 96). The Court finds that adjudicating the class-wide defenses on a collective basis would be far more efficient. "Courts have allowed the use of representative testimony in cases involving allegations of unpaid overtime." *Falcon*, 580 F. Supp. 2d at 540 (collecting cases). As demonstrated by the district court in *Falcon*, Defendants' individual defenses "can be adequately raised at a trial involving representative testimony." *Id.*

"[S]tanding alone, the prospect of individual defenses should not defeat authorization of a collective action." *Rodolico v. Unisys Corp.*, 199 F.R.D. 468, 484 (E.D.N.Y. 2001) (citing *Hyman v. First Union Corp.*, 982 F. Supp. 1, 5 (D.D.C. 1997)) (stating in *Hyman* that courts should not look to any one factor when considering whether to certify).

As for fairness and procedural considerations, the Court finds that adjudicating Plaintiffs' claims in a collective action is in the interest of fairness and comports with the broad remedial goals of the FLSA. As repeatedly emphasized by Defendants, the number of potential opt-in plaintiffs in this case could be substantial. Accordingly, "it would not be in the interest of judicial economy to require the claims be adjudicated in [] individual trials." *Falcon*, 58 F. Supp. 2d at 541. The Supreme Court "has acknowledged that Congress intended to give 'plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources.'" *Id.* (quoting *Hoffman La-Roche, Inc.*, 493 U.S. at 170). In light of that intent, the Court finds conditional certification appropriate, even under the more searching standard ordinarily used for decertification.

### 2.  Production of Potential Class Members' Information

Defendants oppose Plaintiffs' request for the potential class members' telephone numbers and email addresses. Defendants cite to this Court's order in *Regan v. City of Charleston* as support for the proposition that U.S. Mail notice is "all courts in this Circuit, including this Court require." (Defs.' Resp. Opp'n Pls.' Mot. Conditional Certification, ECF No. 80, at 39 n.12.) However, this Court's order denying the plaintiffs' request for phone numbers in *Regan* is more nuanced than Defendants represent. As stated in *Regan*,

> [W]here, as here, the plaintiffs have provided no basis for their need for the telephone numbers or email addresses of potential plaintiffs and where the defendant has objected to the production of such information, the Court is

persuaded by the case law in this circuit that tends to counsel against ordering production.

*Regan*, 2014 WL 3530135, at *6. The present case is clearly distinguishable from *Regan* because Plaintiffs have demonstrated a basis for their need for the email addresses of the potential class members. In fact, this Court has ordered the production of potential class members' email addresses in *McCoy v. RPM Management Group, Inc.* As stated in *Butler*, "'[C]ommunication through email is [now] the norm.'" 876 F. Supp. 2d at 575 (quoting *In re Deloitte & Touche, LLP Overtime Litig.*, No. 11 Civ. 2461(RMB)(THK), 2012 WL 340114, at *2 (S.D.N.Y. Jan. 17, 2012)). Plaintiffs note as their basis that "[e]-mail addresses are desirable as an additional means of mailing, because e-mail addresses can remain the same even after a physical address change." (Pls.' Mot. Conditional Certification, ECF No. 69, at 20.) Accordingly, Plaintiffs' request to also send notice by email is granted. Additionally, the Court grants Plaintiffs' request for the dates of employment of potential class members because disclosing dates is not unduly intrusive to the potential class members and will reduce costs because Plaintiffs will notify only class members whose claims are not time-barred. However, the Court denies Plaintiff's request for the telephone numbers, dates of birth, and Social Security numbers of the potential class members.[6]

### 3. Form of the Court-Authorized Notice

Defendants requested that, should this Court issue an order granting conditional certification, they be afforded an opportunity to confer with Plaintiffs for fourteen days as to the

---

6. Although email addresses are more routinely disclosed, district courts in this circuit have required a showing of a "special need" before requiring the disclosure of telephone numbers. *See Ruiz v. Monterey of Lusby, Inc.*, No. DKC 13-3792, 2014 WL 1793786, at *3 n.1 (D. Md. May 5, 2014) ("Defendants will not . . . be required to provide phone numbers for potential opt-in plaintiffs at this time because Plaintiffs have made no showing of any 'special need' for the disclosure of this information.") (quoting *Calderon v. Geico Gen. Ins. Co.*, No. RWT 10cv1958, 2011 WL 98197, at *9 (D. Md. Jan. 12, 2011)); *see also Amrhein v. Regency Mgmt. Servs., LLC*, No. SKG-13-1114, 2014 WL 1155356, at *10 (D. Md. Mar. 20, 2014) ("Courts in this district hold that absent a showing by plaintiffs of a 'special need' for disclosure of class members' telephone numbers or other personal information, such as social security numbers or dates of birth, ordering such disclosure is inappropriate.").

form of the notice and consent documents.  The Court grants Defendants' request and urges the parties to agree on mutually acceptable notice and consent forms.

## CONCLUSION

For the foregoing reasons, it is **ORDERED** that Plaintiffs' Motion for Conditional Certification is **GRANTED**.

**AND IT IS SO ORDERED.**

_____
PATRICK MICHAEL DUFFY
United States District Judge

**December 4, 2015**
**Charleston, South Carolina**

15